IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHELLEY FRYE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 14-1022-GMS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM**

Plaintiff Shelley Frye ("Frye") appeals from a decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act, 42 U.S.C. § 401-434. The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the court are the parties' cross-motions for summary judgment. (D.I. 8, 10). In support of their motions, the parties submitted well-written and helpful briefs. (D.I. 9, 11). For the reasons set forth below, Frye's motion for summary judgment will be DENIED and the Commissioner's motion for summary judgment will be GRANTED.

**I.   BACKGROUND**

**A.   Procedural History**

Frye filed an application for DIB on April 10, 2013 alleging disability beginning September 1, 2008. (Tr. 59, 83). Her claims were denied initially and on reconsideration. (Tr. 67, 80). Frye then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

1

February 26, 2014. (Tr. 32-58). At the hearing, Frye, who was represented by counsel, amended her alleged onset date to January 30, 2013 due to her intermittent work activity in 2012. (Tr. 35-36; D.I. 9 at 7). On March 18, 2014, the ALJ issued a decision finding that Frye was not disabled. (Tr. 23-31). After the Appeals Council denied Frye's request for review, the ALJ's decision became the final decision of the Commissioner. (Tr. 8-12). Frye then initiated the present appeal. (D.I. 1).

### B. Medical History

Frye was 48 years old at the time she filed a claim alleging disability due to bipolar disorder and depression. (Tr. 59, 83, 168). Frye has a high school degree and past work experience as a customer service representative and retail sales clerk. (Tr. 27). At the time of her disability onset date of January 30, 2013, Frye had been employed at Comcast in customer service for over 15 years. (Tr. 173). Following is a summary of Frye's medical history with respect to those impairments at issue in this appeal.

In January 2012, Frye resumed treatment with her psychologist John W. Dettwyler, Ph.D., after a seven year absence, to address a recent onset of depression. (Tr. 524). From January 30, 2012 to April 16, 2012, Frye was granted a leave of absence from her job at Comcast due to her depression. (Tr. 229; D.I. 9 at 6 n. 6). In May 2012, Frye was hospitalized for one week at Christiana Care for major depression. (Tr. 239-321). Her Global Assessment of Function (GAF) score was 20 upon admission and 45 upon discharge. (Tr. 318, 240). Frye was granted a second leave of absence from work from May 3, 2012 to September 17, 2012. During that time, Frye had a second hospitalization from June 19, 2012 to June 22, 2012 with a chief complaint of depression. (Tr. 322-82). Hospital doctors noted that Frye "showed some signs of depression which resolved fairly quickly." (Tr. 322).

Upon discharge, Frye entered the Rockford Center, an outpatient treatment facility, as a step down from the hospital. (Tr. 42, 386). Frye also had regular appointments with Dr. Dettwyler and her psychiatrist Dr. Praful Desai. Dr. Dettwyler noted that Frye was making progress but remained mildly depressed, irritated, and overwhelmed. (Tr. 521-22). Dr. Desai adjusted Frye's medications numerous times in the second-half of 2012. (T480-84). On September 18, 2012, Frye returned to work. (Tr. 229, 520).

In late January 2013, Frye reported to Dr. Dettwyler that she was feeling worse, with no interest or energy. (Tr. 520). Frye partly attributed her mood to recent medication changes. (Tr. 393-95). But her treating psychiatrist had been out of town and unavailable. (Tr. 393). Upon the recommendation of Dr. Dettwyler, Frye admitted herself to the hospital on January 31, 2013 for major depression. (Tr. 393-94). She had a GAF of 20. (*Id.*). The doctors at Christiana Care switched Frye's medication back because Frye reported a good response from the previous medication. (Tr. 397). Over the course of Frye's stay, she reported that her mood improved. (Tr. 429-30, 433, 462). Notes from this hospitalization indicate that Frye's medication was effective. (Tr. 417, 420). Upon discharge, Frye's GAF was 50. (Tr. 394).

Following Frye's hospital stay, she resumed treatment with Dr. Dettwyler. (Tr. 520). During a February 12, 2013 appointment, Dr. Dettwyler recommended that Frye remain out of work until her symptoms abated. (Tr. 520). On May 10, 2013, Frye was terminated from her employment at Comcast in response to correspondence from Dr. Dettwyler indicating that she remained unable to return to work. (Tr. 229, 230).

From March 2013 to September 2013, Frye's doctors continued to adjust her medications. (Tr. 519-20). In September 2013, Frye's condition deteriorated and Dr. Desai admitted Frye to the Rockford Center for outpatient treatment of depression. (Tr. 42, 534). Upon admission, Frye's

medications were changed again. (Tr. 539). She was treated with individual, group, activity, occupational, milieu, and family therapies. (Tr. 539). Upon her discharge, Frye's GAF was 55. (Tr. 537). Dr. Desai noted that although Frye continued to experience short-term depression and poor motivation with lack of energy, she had made much improvement. (Tr. 539). On November 11, 2013, Dr. Dettwyler noted that Frye was more agitated, but on December 2, 2013, he reported that she was doing better. (Tr. 542).

### C. Medical Opinions

#### 1. Opinion of Treating Psychologist John W. Dettwyler, Ph.D.

On January 10, 2014, Dr. Dettwyler completed a checkbox questionnaire about Frye's depression on which he indicated that Frye had "extreme" restrictions in activities of daily living; "marked" difficulties in social functioning; "moderate" deficiencies of concentration, persistence, or pace; and four or more episodes of decompensation, each of extended duration. (Tr. 544). Dr. Dettwyler also checked that Frye could understand, carry out, and remember simple instructions. (Tr. 545). However, she could not respond appropriately on a sustained basis to supervisors, co-workers, or usual work situations. (Tr. 545). Finally, Dr. Dettwyler indicated that Frye was not able to deal with changes in a routine work setting on a sustained basis. (Tr. 545).

#### 2. State Agency Opinions

On July 10, 2013, Dianne Bingham, Ph.D., a state agency psychological consultant, reviewed Frye's record. (Tr. 62-66). Dr. Bingham noted that Frye had severe affective disorders and anxiety disorders. (Tr. 63). She found that Frye had "mild" restrictions in activities of daily living, "mild" difficulties in social functioning, "moderate" difficulties in concentration, persistence, and pace; and one to two episodes of decompensation, each of extended duration. (*Id.*). Dr. Bingham also found that Frye had moderate limitations in understanding and

remembering detailed instructions, but no significant limitations in understanding and remembering very short and simple instructions. (Tr. 65). On November 13, 2013, state agency psychological consultant Christopher King, Psy.D. completed another review of Frye's record. (Tr. 75-79). He reached the same conclusions on these issues as Dr. Bingham.

### D.   Frye's Hearing Testimony and Adult Function Reports

Through hearing testimony and Adult Function Reports, Frye provided evidence regarding her activities of daily living and social functioning. (Tr. 39-48, 193-202, 212-19). The record reflects that Frye was able to drive to her doctor's appointments and the corner store (Tr. 39); perform household chores such as laundry, light cleaning, and washing dishes (Tr. 40, 195, 197); fix breakfast and lunch (Tr. 195, 214); prepare snacks (Tr. 40); go to her son's house to walk his dog (Tr. 195); go for walks (Tr. 195); and shop for groceries and toiletries (Tr. 198). Although she indicated that "sometimes" she does not bathe due to low energy, she could dress, care for her hair, shave, and use the toilet. (Tr. 213). Frye cites her hospital treatment notes to support her assertions of "subpar" hygiene; however, these notes reveal her hygiene to be "fair." (Tr. 325, 396).

Frye noted that she does not socialize as much as she used to and prefers to stay home. (Tr. 199-200). She does go to the movies, although not as often. (Tr. 199). She also stated that sometimes she goes to see her sister. (Tr. 212, 215). Her brother, sister, and niece sometimes visit, and she talks with family and friends on the phone. (Tr. 41, 46). When her husband gets home from work, she spends time with him. (Tr. 195).

### E. Relevant Testimony of Vocational Expert

A vocational expert ("VE") testified at Frye's hearing, and responded to several hypotheticals.[1] (Tr. 48-57). The first hypothetical involved light exertional work, with moderate limitations in concentration, persistence, and social functioning, and two episodes of decompensation lasting longer than an overnight hospital stay. (Tr. 48). The hypothetical individual was limited to understanding, remembering, and carrying out one and/or two step instructions, with no detailed work. (Tr. 48). The individual could work 40-hour weeks despite her psychological symptoms, as long as the work was entry level, simple, and unskilled. (Tr. 48-50). In response to this hypothetical, the VE testified that such a person could perform work as a laundry worker, housekeeping cleaner, and mail sorter. (Tr. 49). After adding the limitation of only occasional contact with the general public, the VE testified that those jobs remained available. (Tr. 49-50).

Frye's attorney proposed an additional hypothetical question, indicating that the hypothetical individual would miss one week of work in May 2012, three weeks in June and July 2012, four days in February 2013, and six weeks in September through November 2013. (Tr. 53-54). In response, the VE testified that there would "generally not" be work that such an individual could perform, although there were other means of handling missed work, such as Family and Medical Leave Act (FMLA) or short term leave. (Tr. 54).

### F. The ALJ's Findings and Conclusions

The ALJ decided Frye's case pursuant to the five-step sequential evaluation process described in Social Security's regulations. (Tr. 23-31). At step one, the ALJ found that Frye had

---

[1] Only those hypotheticals relevant to Frye's arguments are recounted here.

6

not performed substantial gainful activity since January 30, 2013, the alleged onset of disability date. (Tr. 25). At steps two and three, the ALJ found that Frye had the severe impairments of anxiety disorder, major depressive disorder, bipolar disorder, and obesity, but that she did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22, 25-27). The ALJ proceeded to step four, where she found that Frye retained the residual functional capacity ("RFC") to perform light work, except that she was limited to simple, entry-level, unskilled work, 1-2 step instructions, no detailed work, and only occasional contact with the public. (Tr. 27-30). The ALJ determined that Frye could not perform her past relevant work, but found at step five that Frye was capable of making a vocational adjustment to other work that exists in significant numbers in the national economy. (Tr. 30-31). Therefore, the ALJ determined that Frye was not disabled. (Tr. 31).

### G. Post-Decision Evidence

After the ALJ issued her decision, but before the Appeals Council denied Frye's request for review, Frye submitted a letter to the Appeals Council from Dr. Dettwyler. (Tr. 555; D.I. 9 at 16). Dr. Dettwyler wrote that sometime after the ALJ issued her decision, Frye had been hospitalized for about a week due to depression. (D.I. 9 at 16). The Appeals Council received Dr. Dettwyler's letter and made it an exhibit, but found the information did not provide a basis for changing the administrative law judge's decision. (Tr. 9, 12).

### II. STANDARD OF REVIEW

A reviewing court will reverse the ALJ's decision only if the ALJ did not apply the proper legal standards or if the decision was not supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). If the ALJ's findings of fact are supported by substantial evidence, the court is bound by those findings even if it would

have decided the case differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Evidence is considered "substantial" if it is less than a preponderance but more than a mere scintilla. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, the court may not undertake a *de novo* review of the decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

### III. DISCUSSION

Frye makes several arguments in support of her motion for summary judgment. First, according to Frye, the ALJ erred by not considering in her RFC assessment Frye's episodes of decompensation before the alleged onset date of January 30, 2013. (D.I. 9 at 2-4). Second, the ALJ's rationale for giving the opinion of Frye's treating psychologist "little weight" was not supported by substantial evidence. (*Id.* at 11-15). Third, Frye's testimony was entitled to substantial credibility due to her long work history with a single employer. (*Id.* at 15-16). Finally, the Appeals Council should have considered the letter from Dr. Dettwyler submitted after the ALJ's decision as new and material evidence. (*Id.* at 16-20). Each of these arguments are addressed in turn.

### A. RFC Assessment

Frye claims that the ALJ erred by not considering in her RFC assessment the hypothetical posed by Frye's counsel, which included Frye's episodes of decompensation before the disability onset date. An RFC assessment must be based on "all of the relevant evidence in the case record." S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *2. Social security regulations note that a claimant's level of functioning from a mental impairment "may vary considerably over time." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D). To properly evaluate the severity of a mental impairment, the ALJ is required to consider "evidence from relevant sources over a sufficiently long period prior to the date of adjudication." *Id.*

Ultimately, the ALJ found that Frye's anxiety disorder, major depressive disorder, and bipolar disorder were severe. (Tr. 25). The episodes of decompensation predating Frye's onset date did not provide further insight into Frye's functional limitations different from the evidence in the record after the onset date. In addition, the ALJ considered Frye's history of experiencing episodes of decompensation in manner not inconsistent with the hypothetical posed by Frye's counsel. Frye's counsel posed a hypothetical that had two episodes of decompensation in 2012 and another two episodes in 2013. (Tr. 53-54). As one of many methods to evaluate the severity of a mental disorder, Social Security regulations consider the number of episodes of decompensation within a single year. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. The ALJ relied on the VE's testimony in response to a hypothetical question that contemplated, among other things, "two episodes of decompensation lasting longer than an overnight hospital stay." (Tr. 48-50). Accordingly, the ALJ did not err in her RFC assessment by not specifically addressing the decompensations before the onset date.

9

## B. Treating Psychologist Opinion

Frye argues that her treating psychologist's opinion was entitled to more than "little weight." (*Id.* at 11-15). A treating psychologist's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). However, an ALJ is entitled to disregard a treating psychologist's opinions when they are "conclusory, lacking explanation, and inconsistent with other medical evidence in the record." *Griffin v. Comm'r Soc. Sec.*, 305 F. App'x 886, 891 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (stating that where there is contradictory evidence, an ALJ may reject the opinion of the treating physician outright, or may accord it more or less weight depending on the extent to which it is supported). Finally, any opinion by a treating psychologist that a claimant is disabled is not dispositive. *Perry v. Astrue*, 515 F. Supp. 2d 453, 462 (D. Del. 2007). Only the ALJ can make a disability determination. 20 C.F.R. § 416.927(d).

The court finds that the ALJ did not err in giving Dr. Dettwyler's opinion "little weight." As an initial matter, the ALJ did not wholly reject Dr. Dettwyler's opinion. The ALJ agreed with Dr. Dettwyler that Frye had moderate difficulties in concentration, persistence or pace, and was only able to perform simple unskilled work. Those limitations were included in the hypothetical questions posed to the Vocational Expert. (Tr. 48-52).

The ALJ also agreed with Dr. Dettwyler that Frye demonstrated difficulties in activities of daily living and social functioning, but did not wholly adopt Dr. Dettwyler's opinion regarding the severity of those difficulties. Whereas Dr. Dettwyler opined that Frye had "extreme restrictions" in activities of daily living, the ALJ concluded it was mild, and whereas Dr. Dettwyler opined that Frye had "marked" difficulties in maintaining social functioning, the ALJ concluded it was

10

moderate. (Tr. 29). The ALJ articulated specific reasons for her conclusions and those reasons were supported by substantial evidence.[2] (Tr. 29). The ALJ reasoned that Frye's ability to perform personal care, household chores, drive, grocery shop, and prepare meals did not support a finding of extreme restriction of activities of daily living. (*Id.*). Further, Frye described having a good relationship with her husband, and regular interactions with family and friends. This did not support a finding of marked difficulties in maintaining social functioning. (*Id.*). Although some evidence in the record indicates that Frye had issues doing things around the house (Tr. 528, 531), that does not mean that the ALJ's decision was not supported by substantial evidence.

Finally, the ALJ correctly noted that there is evidence of only two episodes of decompensation since the alleged onset date, not four, as Dr. Dettwyler stated in his opinion. (Tr. 30). The discrepancy is likely due to the fact that Dr. Dettwyler submitted his opinion before the onset date was amended at the hearing. It is unlikely, however, that the amended onset date would have changed the outcome of the ALJ's decision as the Social Security Regulations instruct the ALJ to consider the number of episodes per year, which in this case was two.

### C. Credibility Analysis

Frye argues that the ALJ never explicitly acknowledged the length of Frye's work history in evaluating the credibility of her subjective complaints. (D.I. 9 at 15-16). Under 20 C.F.R. § 404.1529(c)(3), the kinds of evidence that the ALJ must consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements include: the individual's daily activity; location, duration, frequency, and intensity of the individual's

---

[2] The court finds no merit in Frye's argument that the ALJ relied on the opinions of the State Agency consultants to reject Dr. Dettwyler's opinion. (D.I. 9 at 15). The ALJ rejected part of their opinion as well, and adopted parts on which the Dr. Dettwyler and the consultants agreed.

11

symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Although work history is not among these listed factors, it is well-established that when a claimant has a lengthy history of continuous work, his or her testimony may be entitled to "substantial credibility." *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Work history, however, "is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints." *Thompson v. Astrue*, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010); *Ruffley v. Colvin*, 2014 WL 807953, at *14 (W.D. Pa. Feb. 28, 2014). "Indeed, a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility." *Thompson*, 2010 WL 3661530, at *4. Ultimately, An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. S.S.R. 96–7p.

Here, the ALJ offered several reasons for finding Frye's claims less than fully credible, including her testimony regarding her functional abilities and activities of daily living, her ability to work full time for a number of years despite her mental illness, and her improvements when she was on the right combination of medications. (*See* Tr. 29). From this evidence, the ALJ concluded that, although Frye could not return to her past relevant work, she was at least capable of simple unskilled work with only occasional contact with the public. (*Id.*). Accordingly, the ALJ considered Frye's subjective complaints in light of all the evidence of record, and thoroughly explained why her allegations of disabling pain and/or limitations were not supported by the

record. The ALJ's findings are supported by substantial evidence, and the ALJ did not err in her credibility determination by not giving greater weight to Frye's testimony due to her long work history. *See, e.g., Salazar v. Colvin*, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014) (finding no grounds to remand based on the fact alone that a claimant has a long work history); *Scipio v. Colvin*, 2014 WL 3676326, at *8 (E.D. Pa. July 24, 2014) (stating that remand to consider a long work history is not required where it would not have changed the outcome of the case); *Polardino v. Colvin*, 2013 WL 4498981 at *5 (W.D. Pa. 2013) (finding remand to reconsider credibility was not warranted where ALJ was clearly aware of plaintiff's long work history when he determined that plaintiff could not perform past relevant work).

### D. New and Material Evidence

Frye asks the court to consider Dr. Dettwyler's letter submitted to the Appeals Council regarding Frye's latest hospitalization. (D.I. 9 at 16-20). This court cannot consider any evidence that was not part of the record considered by the ALJ. *Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 67 (3d Cir. 2015). When a claimant seeks to rely on evidence that was not before the ALJ, a district court has the option to remand the case to the Commissioner for consideration of that evidence, but only if the evidence is "new" and "material", and only if the claimant shows good cause why it was not presented to the ALJ. *Id.* New evidence is not material if it "does not relate to the time period for which the benefits were denied." *Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 68 (3d Cir. 2015); *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern ... a later-acquired disability or [ ] the subsequent deterioration of the previously non-disabling condition."); *Podsiad v. Astrue*, 2010 WL 662211, at *16-17 (D. Del. Feb. 22, 2010) ("[M]any of the additional medical records concern treatments or

doctor's visits that occurred *after* the ALJ issued his decision. Records postdating the ALJ's decision are not to be considered." (emphasis in original)).

Here, the ALJ's decision was based on the time period of January 30, 2013 through the date of the decision, March 18, 2014. Dr. Dettwyler's letter relates to Frye's May 2014 hospitalization and her psychiatric status at that time, which occurred two months after the ALJ's decision. (Tr. 555). Because the new evidence documents a subsequent deterioration of a previously non-disabling condition, the court has no grounds to remand the matter on this basis. *See Dunson*, 615 F. App'x at 68 (affirming district court's decision not to remand the case for consideration of new evidence which related to the time period after the ALJ rendered her decision); *Lisnichy v. Comm'r of Soc. Sec.*, 599 F. App'x 427, 429-30 (3d Cir. 2015) (holding that the district court did not err in refusing to remand a case to consider letters from physicians describing a worsening of claimant's condition after the ALJ rendered her decision).

## IV. CONCLUSION

For the foregoing reasons, (1) Frye's motion for summary judgment (D.I. 8) is DENIED; and (2) the Commissioner's motion for summary judgment (D.I. 10) is GRANTED. An appropriate order will be entered.

Dated: May 12, 2016

UNITED STATES DISTRICT JUDGE